Case number 19-3599, USA v. Julius Ruffin. Oral argument not to exceed 15 minutes per side. Ms. Cahoon for the appellant. Thank you. Good afternoon. May it please the court, opposing counsel, my name is Claire Cahoon and on behalf of the Federal Republic Defender, I represent Julius Ruffin in this case. I would like to reserve three minutes for rebuttal, please. Very well. Mr. Ruffin's Fourth Amendment rights were violated by both a search warrant lacking probable cause and a highly intrusive and unreasonable body cavity search. There's no search that puts more at issue our humanity and our dignity than a body cavity search. And for that reason, I'm going to start with my second issue, which is the reasonableness of that search. This very intrusive body cavity search was unreasonable. We just start with the factual information that I'll be building on. Mr. Ruffin was subjected to a digital rectal penetration, penetration in his rectum by a speculum twice, as well as x-rays, somewhere between two and four soapset enemas over the course of more than an hour, forced bowel movements in front of both medical personnel and law enforcement officers, all of which occurring while he was either shackled or cuffed or both. Now, this court has previously looked to the three factors outlined by the Supreme Court in Winston versus Lee for assessing the reason. Let me let me ask you this question. If I just said, look, the difference between Banks and Booker is there was a warrant in one and not in the other one. Would that be a reasonable distinction of the cases? With all due respect, Your Honor, it would not. The intrusion in Booker was much more severe. In Booker, that patient was not only given a digital rectal exam, he was also partially paralyzed and then intubated. It was a much more invasive procedure. The defendant in Banks, on the other hand, although he did have to withstand a digital rectal exam, he was only or excuse me, that's not even the case. There was no exam. I apologize. He was simply given over counter laxatives and then an x-ray. So it was non-invasive. There's. I don't even I'm not even sure they did the x-ray in Banks. But what but OK, so Booker is more extreme. It seems to me that the facts here are not quite as extreme as Booker. You may disagree. But there was a warrant here. There was no warrant in Booker, but more extreme facts. Why don't we just come out on the bank side of the ledger then? Thank you, Your Honor. And I don't disagree that Booker is more extreme. I think that would be an unreasonable position for me to take. But I do still think that based on the factors that are outlined in Winston v. Lee, this is a highly intrusive search that doesn't pass muster. And I'd like to explain why. And we'll just start with the intrusive nature of the search, which is the second factor under Winston v. Lee. Here we have not only medical procedures that involve penetration, but we also have a disagreement when he arrives between the radiologist and the attending physician about whether there are actually foreign bodies or stool in his body. And then we have someone who's being forcibly incapacitated. Now, Judge Gwynn determines that force was there was no incapacitation. Now, of course, this court reviews that question for clear error. But respectfully, Judge Gwynn was an error there because we know from the record based on this defendant's testimony that he was both shackled for part of the procedures. He was placed on a bed by medical personnel and law enforcement officers, not under his own steam, and that he was cuffed to the bed during the course of those enemas. So I think that adds to the intrusive nature. There's testimony during the suppression hearing that he actually pulled out his own I.V., which I think says something about the distress that this gentleman was experiencing during the course of these procedures. And then if we're talking about dignitary interest, which that second factor goes to, we also know that during his initial assessment, the doctor and the police officers were joking about the situation and joking at Mr. Ruffin's expense. I think that also goes to dignitary interest. So if we look at the spectrum of authority, it's very limited. There aren't a lot of body cavity search cases out there. If we look at the spectrum of authority, the cases where either this court or the Supreme Court has said, nope, that's reasonable, that's not very invasive, are cases like banks where we have non-invasive medical procedures. And there was also a bunch of additional facts in banks that supported the search, like the defendant had previously concealed drugs inside his body. And then you have Schmerber, where we simply have a blood draw. Now, those are cases where either this court or the Supreme Court has said, yep, that's fine, that's reasonable. On the unreasonableness end of the spectrum, and granted, some of these cases didn't involve warrants, still, we have more invasive procedures. We have stomach pumping, like in Rochin. We have the rectal exam and then the intubation, like in Booker. And then in Winston, we have anesthesia and then surgery. There's obviously an escalation of the intrusion. Do you think that it's unreasonable, it's per se unreasonable if you could give somebody an x-ray and don't do it and instead resort to the things that they did in this case? I think it's always a totality of the circumstances assessment for this court to make based under the Winston factor. So I'm not asking this court to make a bright line rule. I do think in this case, we have a situation where it seems that the non-invasive procedures used in banks, like laxatives and an x-ray, would have been equally effective here. And going really towards both the first and the second prong, Dr. Revelle, who was the attending physician, testified at the suppression hearing that this defendant could have passed these objects naturally in the course of time, if additional time had been given. Now, I understand that Ms. Healy is going to get up and say, well, there was some medical necessity because if the bags had well, I would say two things in response to that. One, that risk would be present every single time there's a concern that someone is concealing drugs on their body. So that can't be what turns the analysis for this court or every time a warrant would be valid. It would be a reasonable search. Yeah, Ms. Cahoon, let me ask you about when you're talking about health concerns. Was there not a health concern in Booker for paralyzing the patient that that could cause some harm to the health of the suspect? Yes, absolutely, Your Honor. Okay, but was that here? Was there anything, any health concern here of that nature? Not of that extreme nature, but there was still a health concern. What Dr. Revelle testified to was that the object could be passed naturally, again, without medical intervention, and that by using a speculum in an attempt to visualize that object, the primary risk of that kind of procedure is rupturing the bag. Now, that's important because he then also testifies that really the danger of not trying to extract the object or letting it stay in there and then pass naturally is about equal because the risk is always about rupture. And so now we have a doctor or a nurse performing a procedure that the doctor has identified, although it's a minimal risk, still creates a risk of rupture, which is the real risk of harm there. But then I'd also like to talk about the third factor, which is the community interest in fair and accurate determinations of guilt and innocence. This also supports Mr. Ruffin. Here we have a source of information who was already providing other evidence that law enforcement could have used against Mr. Ruffin about general drug trafficking. The source of information was alleging that he or she had witnessed a drug trafficking event occurring between Mr. Ruffin and other individuals, and that that evidence, without the need for the actual drugs, could have either been counsel. We may have lost Judge Cook. I'm not sure if if she's still with us in the argument. We'll give you your time, but I think we may need to get Judge Cook back on the line. OK, Judge Cook, can you can you hear us and see us? Yes. OK, counsel, you may resume your argument. Thank you, Your Honor. I think I was speaking about the third prong and I was simply pointing out that because the source of information had other observations about drug trafficking, that that could have been used either a trial against Mr. Ruffin without the need for the actual drugs or could have been used to build a further investigation against Mr. Ruffin. And we know that's true because certainly the cases that my office sees and the cases that this court is frequently reviewing involve situations where a confidential informant or source of information observed drug trafficking. And then they build on that from with surveillance or an undercover buy or a reverse stash housing. There are lots of other ways to gain additional information. So that third prong, again, is in Mr. Ruffin's favor. Now, I do want to use the last few minutes I have remaining here to talk a little bit about the warrant itself. And I'm going to skip through the probable cause analysis and talk first about good faith, because that was really what Judge Gwynne made his decision on. And although this court is reviewing this case de novo, I still think it's an important place to start. The good faith exception should not apply in this case for two critical reasons. The first is that the affidavit itself gave insufficient support for the reliability of the source of information. And in fact, the government concedes as much in their brief at page 20. They say that, yes, reliability of that source was not provided. And the court knows from cases like Weaver and lots of other authority that a reasonably well-trained officer would have to know the search was illegal despite the magistrate's authorization. Here we have no support that the source of information had a reason to know the that. There's been no independent cooperation. And I want to make really clear the question is not whether there's been independent corroboration as to drug trafficking. The question is as to whether there's been independent cooperation that Mr. Ruffin is concealing drugs on his body. And there's no evidence of that. After Mr. Ruffin leaves and is pulled over by law enforcement, his vehicle is searched. They find no drugs. And he's interviewed and he denies concealing any drugs. So there's been no independent cooperation. And then over and above that, I think probably most importantly, going towards the question of good faith, is what's going on with the affidavit itself. Wait, well, how would they what would the corroboration look like of that particular point? I mean, they they corroborated the car, the travels. I mean, some of the other things are corroborated. So you're saying they have to actually corroborate that he's got that he ingested the drugs? Well, I'll give the court an example. In United States versus banks, although there was no warrant, but I think the facts apply to the situation in that there was independent corroboration of banks had there been a warrant, because one, he was known to law enforcement to have previously concealed drugs in his rectum. He had a history of that. And two, when he was being strip searched at the jail, he wouldn't bend over and he was clenching his buttocks in such a way that suggested he was being evasive and he was trying to prevent law enforcement from completing their strip search. And so this court at that point said this is all further corroboration of there being concealment of drugs in that person's body. Now, here we don't even have a source of information who's able to establish that for us. Just pivoting back to probable cause for a second. So could the police. So you're saying he refused if he had refused to bend over or whatever, that that would have allowed them to do the search. But did they have enough to detain him in the first place, to question him, to arrest him? What did they have enough to do? And then in your mind, that leads to the ability to perhaps get to the ingested drugs? Yeah, we're not contesting the stop itself or the questioning of Mr. Ruffin. It's really just is there independent cooperation to support that bare bones affidavit for the search of his body, that very intrusive search. And I do want to point out to the court that one of the other problems with good faith here is that the author of that bare bones affidavit is also the person who's executing on the warrant. Now, in United States versus Barrington, which is a Fifth Circuit case, the Fifth Circuit said we will never apply the good faith exception in those circumstances. And then in Weaver, this court made note of that. This court didn't adopt it because it wasn't at issue in Weaver, but it at least said, hmm, that's a good point. This court also noted that in Dicta and Baxter when it was talking about Leon. So here, the author of the affidavit is task force officer Jones. Mr. Ruffin testified the task force officer Jones was present while his enema was being performed. And even if the court felt like that was too attenuated, the report of investigation, which is attached as exhibit three to the motion to suppress, also indicates an additional officer, Officer Kelly, came to assist with the drafting of the search warrant. And then it's Officer Kelly who transports Mr. Ruffin to the hospital, who's executing on that search warrant. And Barrington, which this court favorably noted in Weaver, says an officer who submits a bare bones affidavit and then executes it himself cannot be said to be acting in good faith. And I would respectfully ask that the court employ that reasoning here. I can see I'm out of time. Thank you, Ms. Calhoun. Ms. Healy, you may speak. Good afternoon. May it please the court. My name is Vanessa Healy on behalf of the United States. On October 19, 2018, after independently corroborating numerous pieces of information received from a known confidential informant, DEA investigators obtained a warrant to search the body of Julius Ruffin. This court owes great deference to the magistrate judge's determination that the affidavit used to obtain the warrant established probable cause. After obtaining the warrant, Mr. Ruffin was taken to the hospital where medical personnel performed a reasonable search that recovered 120 grams of a mixture of heroin and fentanyl. Therefore, this court should affirm the district court's denial of Ruffin's motion to suppress. I am going to start. So there are two issues of an appeal, as Ms. Calhoun discussed, the probable cause of the affidavit and the reasonableness of the search. And I want to start with the probable cause established in the affidavit, because that does affect the analysis when it comes to the reasonableness of the search. An affidavit is judged on adequacy of what it does contain, not on what it lacks. The government concedes that the affidavit here did not include information related to prior tips or reliability from this known informant. However, the informant's information was sufficiently and independently corroborated by police investigation. If you look at the affidavit itself, which is district court document 20-1, page ID 58 and 59, there are numerous pieces of information that I'll go through that the I guess your friend on the other side, her point is there's nothing there that goes to whether he ingested any drugs. What is it that corroborates that? Yes. So if you look at the affidavit itself in paragraph five, the informant advised investigators that he saw Mr. Ruffin engage in the drug transaction and saw Mr. Ruffin squeeze a plastic bag in his hands containing the drugs. In the next paragraph, the confidential informant heard from Mr. Ruffin that he had to use the restroom and he saw Mr. Ruffin enter the restroom holding that bag of drugs where he remained for approximately 20 minutes. And when he returned from the restroom, he no longer had the bag. So that's the information that the informant provided with respect to the transaction and what happened in the house. Subsequently, when Mr. Ruffin was pulled over for his traffic stop, the investigators canine alerted to narcotics in the vehicle, which is why at that time they did a probable cause search of the vehicle, but were unable to find any drugs in the car or on Mr. Ruffin's immediate person based on a pat down. So using the information from the confidential informant, as well as the independent police search of the vehicle, the officers... Was there any testimony or is there any testimony that says, in my experience as a law enforcement officer, when a dog hits and we can't find the drugs, they've often been ingested or something like that? So there is no statement from the investigator in the affidavit to that nature. But actually, if you look at United States v. Banks, one of the cases that Ms. Cahoon discussed and that I will discuss with respect to the reasonableness of the search, there were similar facts there where they did obtain the warrant and the canine alerted and no drugs were found, which is why they subsequently obtained a warrant for the defendant's person. And with respect to that actual statement not being in the affidavit, based on the totality of the circumstances review, affidavits aren't going to be perfect. And when they're made in the haste of the investigation, an officer isn't necessarily going to be able to put in each and every kind of magic language, magic phrase that needs to be put in here. But a reasonable person would still conclude that because the drugs could not be found on Mr. Ruffin's immediate person or in the car, they were likely then hidden inside his body. Are there any cases that say that? I mean, are close to saying that or that it's common sense or something like that? Well, so the Banks case, like I said, they used similar facts there to establish that the Banks is, again, Ms. Cahoon is right. I mean, in Banks, he was acting suspiciously, right? He was refusing to bend over. He was clenching his butt. I mean, it's like, I mean, there were some, there are a few additional facts there, I suppose, other than just the dog hitting and not finding the drugs. And again, although not noted in the affidavit itself, in the highway patrol report and the DEA report, which are exhibits six and seven government's exhibits to the suppression hearing, the officers did note that when pulled over, Mr. Ruffin was acting very nervous, smelled of marijuana, and there were other indicators that supported their decision to do the search at that time. So the government's position is that based on the corroboration that the investigators did using the confidential informant's information, the affidavit did establish probable cause, not just for a search warrant generally, but for a search warrant for the body of Mr. Ruffin. Again, this court owes great deference to the magistrate judge's determination of probable cause, but if this court determines that probable cause did not exist, as the district court found, suppression should still be denied under the we on good faith exception. Because here, there was enough probable cause that the affidavit wasn't so objectively unreasonable to be considered bare bones or conclusory. I'd now like to turn to the reasonableness of the body cavity search. The search here posed minimal safety risks to Mr. Ruffin. It was authorized by the search warrant we just discussed. He was not forcibly incapacitated via paralyzation or sedatives or anesthesia. And there was limited other evidence tying him to the drug trafficking charges. As Ms. Cahoon noted, this court looks to three factors when threatens health and safety, the extent of the intrusion, and the community's interest. So I want to talk a little bit more about Booker versus Banks again. In Booker, as we previously discussed, there was no warrant and the methods that were used were very severe. The defendant was partially paralyzed and intubated for a significant period of time in order for them to perform the search. And this court in Booker found that those methods posed serious medical risks and really invaded the defendant's interest, as well as the investigators had the option to do other things like x-rays or laxatives and chose not to. So it's the double combination of not having the warrant and having the very severe measures taken. In Banks, they did obtain a And I want to point out that the court in Booker specifically noted that it was not addressing cases that were materially different, like when officers had obtained a court order. So right away, you have this significant distinction from Booker, where it's not speaking to the same circumstances that we had here in Ruffin. And if you go through just a brief timeline of what happened to Mr. Ruffin at the hospital, the actual medical procedures that performed took less than 90 minutes. So first, the nurse performed the digital rectal exam and an exam with a speculum where she could actually feel and see a plastic bag within Mr. Ruffin. And I know it was raised that the use of an x-ray or a laxative could have been less invasive and done first. But in this case, based on what the nurse saw, it was believed that she could attempt to manually retrieve the objects herself, but she was not able to. And once this was communicated to the attending physician, that's when he ordered the x-rays, was able to confirm the three foreign objects in Mr. Ruffin's anal cavity, and then decide to use the soap-side enemas in order to get him to release them. And that he did release. What are we to make of the joke that was made and kind of the public display of all this? Does that go to the intrusion factor, or is it just irrelevant, or what's the government's position? Unfortunately, the only information that we have with respect to the jokes and the people that were in the room is the testimony from Mr. Ruffin himself. So we don't have a contradicting position there. But even if that is true, and what Mr. Ruffin indicates is true, because there was a search warrant, and because the methods that were used were reasonable, that is what is going to carry the weight in the end of the day, as opposed to any sort of jokes that were made in front of him. And we don't by any means say that's okay. What is the warrant? Why does the warrant matter exactly? It doesn't seem to fit within the three factors, does it? The three factors seem to go to the search itself, or how the search itself is carried out. Well, the district court addressed the warrant in the context of the second factor, which I think makes sense because you're looking at the degree of intrusion into not only the dignitary interests of the defendant, but also the privacy interests. And the privacy interests are going to be effective when you have a search warrant saying we can actually do what we're going to do. So I it does make sense to consider the presence of the warrant in the context of the second factor. I also just want to briefly touch on the testimony that we received from Dr. Revel, who was the attending physician at the motion to suppress. I believe came up with Ms. Cahoon, the medical, any risks that were posed to Mr. Ruffin based on the methods that were happening, which again goes to the first factor that the court would analyze here. And not only did the actual procedures, so the digital rectal exam, the speculum, the x-ray and the laxatives, not or the soap set enemas, excuse me, not pose significant risks to Mr. Ruffin's health. But Dr. Revel himself testified that the most significant risk was the fact that these drugs were inside his body. And so at that point, medical personnel, their only concern, and Dr. Revel said this, that he treated him like any other patient. Their only goal is to get those items out of his body. So not only did the methods not prove to be a risk, but compared to the fact the drugs were in there, that was really the concern. And lastly, when it comes to the third factor with regard to the community's interest, the district court noted that here, like in banks, there was limited other evidence connecting Mr. Ruffin to the drug trafficking. And yes, although we had, the government did have the information from the confidential informant, the drugs themselves are obviously the key here, which is why it was important for them to obtain the warrant to actually retrieve the drugs. And Sam, our position is that the affidavit- Let me ask you a question. The judge, I don't know if you have a response, the judge seemed to suggest at least that there's a higher probable cause requirement if it's an invasive body cavity search. Is that what he meant? I'm a little puzzled by that. It's to be kind of an offhanded remark in the opinion, but then he jumps into good faith. Is that why he didn't think that there was probable cause here? Our position would be that the probable cause determination, whether it's the body cavity or not, is based on the totality of the circumstances like it always would be. And we understand that Judge Gwinn did, he did not in the end make a and jumped right to the good faith exception. With respect to this court, we're asking that you determine that the affidavit did in fact establish sufficient probable cause. However, if necessary, the Leon good faith exception would still apply because the officers independently corroborated the information through surveillance, through questioning, through the search of the vehicle, and therefore acted in good faith upon the warrant. With that, we ask that the court affirm the district court's denial of Ruffin's motion to suppress. Thank you. Thank you, Ms. Healy. Ms. Cahoon? Thank you, your honor. I do want to correct some matters in the factual record because they're critical to this court's analysis. With all due respect to Ms. Healy, and this is also outlined in the briefing, the source of information did not say and is not presented in the affidavit that he saw Mr. Ruffin take a bag of drugs into the bathroom. That's not what the affidavit says. He just took a plastic bag, correct? Nothing about drugs being in the bag. That's correct, your honor. And the preceding paragraph talks about a bag of drugs that Mr. Ruffin is squeezing during the transaction. So I think one can infer that if it were that same bag, that that would be in the affidavit. So that's not the case. Additionally, there was some discussion about the independent corroboration being the canine officer. And I believe Judge Albandian was asking, wasn't this an alert to the vehicle? And I just want to emphasize, this was a canine alert to the vehicle. They searched the vehicle, they found no drugs, and there was no testimony or evidence presented that a canine can alert to a vehicle but really mean there are drugs inside a person. That's not the argument that was presented. So again, I'm asserting there's been no independent corroboration to support the lack of reliability for the source of information. And Ms. Healy said that there were other indicators. I think what essentially identified was nervousness. And I don't mean to make light of a very serious situation, but I think any person of color is nervous these days when they're pulled over by law enforcement. And there wasn't any argument at the district court level that his nervousness was one of the reasons why they believed he was concealing drugs on his person. So again, I would assert there was no independent corroboration that would support probable cause. As to the reasonableness of the search, there was some disagreement about whether a visual, whether a plastic bag was visualized. There's something in the medical records about a nurse thinking she saw something that looked like plastic. Mr. Ruffin testified that he recalled the nurse saying she didn't see anything. And then in Judge Gwynn's opinion, he indicates that it seemed that Dr. Revelle was either not recalling that or not crediting it. So there's definitely, that's a question of factual dispute. Certainly Judge Gwynn did not rely on that. And since there's no indication that he was, that determination was clearly erroneous, this court should adopt that there's really a question mark as to whether the nurse was able to visualize anything. At the end of the day, we're really talking about a lack of probable cause that then leads to a highly intrusive, the most kind of intrusive search of a person that I can think of. And so respectfully, I'll just leave the court with the words of Schmerber. The Schmerber court said that we hold today that the constitution does not forbid that the state's minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions or intrusions under other conditions. I would respectfully argue that this is a substantial intrusion. The kinds of cases where either this court or the Supreme Court has determined searches were reasonable or far less intrusive procedures, blood draws, the administration of laxatives. And although the conduct here might not have been as severe as Booker, it still falls on the unreasonable side of the law. So I respectfully ask the court to reverse the decision of the district court. Thank you. Thank you, counsel. We will take the case under submission. The clerk may call the next case.